UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEROME DERRELL ROBERTSON,

    Plaintiff,

v.

DEPUTY COMMISSIONER, *et al.*,

    Defendants.

CAUSE NO. 3:19-CV-938-DRL-MGG

OPINION AND ORDER

Jerome Derrell Robertson, a prisoner without a lawyer, filed a complaint alleging that his mental health needs are not being met in a constitutionally adequate manner while being housed in administrative segregation at the Westville Correctional Facility. He also filed a motion for a preliminary injunction. ECF 3. After screening, Mr. Robertson was granted leave to proceed against the Warden of the Westville Correctional Center in his official capacity on an injunctive relief claim to provide him with constitutionally adequate mental health care as required by the Eighth Amendment. He was not permitted to proceed on any other claims, including claims for monetary damages, because he has previously accrued three "strikes;" and an inmate who has struck out can proceed *in forma pauperis* only if he is "under imminent danger of serious physical injury." *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996) (quoting 28 U.S.C. § 1915(g)).

The court directed that the Warden respond to the motion for preliminary injunction and file an affidavit or declaration with the court explaining how Mr. Robertson's mental healthcare needs are being addressed in a manner that satisfies the requirements of the Eighth Amendment. The Warden has filed his response, and Mr. Robertson has now filed a reply. Accordingly, Mr. Robertson's request for a preliminary injunction is ripe for decision.

As an initial matter, Warden Galipeau spent a considerable portion of his response brief advancing an argument that the court lacks subject matter jurisdiction. This argument is misplaced. The court has granted Mr. Robertson leave to proceed on an Eighth Amendment claim against the Warden in his official capacity to provide him with constitutionally adequate mental health care. Thus, Mr. Robertson is proceeding on a claim "arising under the Constitution, laws, or treaties of the United States," so the court has subject matter jurisdiction under 28 U.S.C. § 1331.

Furthermore, as noted in the court's screening order (ECF 6), the Warden has both the authority and the responsibility to ensure that Mr. Robertson receives constitutionally adequate mental health treatment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out."). This does not mean, as Warden Galipeau's response suggests, that he would be ordered to deliver medical care personally (*see, e.g.*, ECF 9 at 6, noting that a warden could neither provide radiation therapy for a cancer patient nor require a medical provider to do so). However, if Mr. Robertson is not receiving constitutionally adequate medical care from the providers to whom the Warden has delegated that obligation, then it is the Warden's responsibility to ensure he receives such care—either by negotiating a solution with the providers at the facility, if possible, or by providing Mr. Robertson with access to medical providers outside the facility who are willing to provide constitutionally adequate care. Thus, Warden Galipeau has the authority to grant the relief Mr. Robertson was granted leave to pursue—namely, access to constitutionally adequate medical care.

Turning to the merits of the motion, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original). To obtain a preliminary injunction, the moving party must show: (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood

of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323-24 (7th Cir. 2015). The court then "weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). An injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quotation marks and citation omitted). While every inmate is entitled to receive constitutionally adequate medical care, *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976), before an inmate can obtain injunctive relief, he must make a clear showing that the medical care he is receiving violates the Eighth Amendment prohibition on cruel and unusual punishment, *see Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012).

Here, Mr. Robertson alleges that that his mental health needs have been neglected for the past eighteen months while he has been in administrative segregation. He asserts that he does not receive treatment even though he complains of constant anxiety attacks, major depression, and hearing voices that tell him to harm himself and others. According to Mr. Robertson, a mental health worker chats with him at the front of his cell occasionally while other inmates listen, but that is the extent of the care he receives. That same individual then documents that Mr. Robertson refused care—an allegation that Mr. Robertson denies here.

Mr. Robertson's medical records tell a different story. According to his medical records, Mr. Robertson has received regular care for his mental health needs throughout his time in administrative segregation. ECF 9-2. Mr. Robertson has been checked on during mental health "rounds" approximately every week for the last year. ECF 9-1 ¶ 10. In addition to these informal check-ins at the front of his cell, he has had several visits with mental health workers outside of his cell. *Id.* The records show that he has been offered an out-of-cell visit approximately once a month, but that Mr.

3

Robertson regularly refuses those visits. ECF 9-2. Mr. Robertson, on the other hand, contends that these records have been falsified in this manner, and that he has not refused visits.

Even if Mr. Robertson's assertion that the medical records were falsified is accepted as true and each of the medical records that indicates that Mr. Robertson refused care is ignored, the amount of care that Mr. Robertson has received is substantial. Considering just the month prior to the Warden filing his response, Mr. Robertson had nine encounters with mental health staff. ECF 9-1 ¶ 11. On October 7, 2019, Mr. Robertson was visited at his cell front and medication was discussed. *Id.* As a result of this discussion, his medication was increased. *Id.* The next day, medical records indicate that Mr. Robertson was offered an out-of-cell visit but refused—an assertion that Mr. Robertson disputes. *Id.* On October 15, 2019, Mr. Robertson attended an out-of-cell meeting. ECF 9-2 at 892-897, 920. During the meeting, Mr. Robertson lamented the quality of his mental health care and opined that he needed to be treated in a specialized mental health unit. *Id.* He was advised that, given that he does not engage when he has the opportunity, he would not be considered for a transfer to a mental health unit where he could receive more intensive treatment. *Id.* at 920.

An individual action plan dated October 15, 2019 outlines several goals including improving anger management, maintaining mental health stability while in restrictive housing, and mitigating self-injurious thoughts, feelings and actions. *Id.* at 894-96. Under the plan, individual therapy is offered monthly and medication management is offered every ninety days. *Id.* Mr. Robertson's medical records indicate that he was offered an out-of-cell visit on October 22, 2019, in response to a health care request, but that he refused that out of cell visit. ECF 9-1 ¶ 11. On October 24, 2019, he received a visit at the front of his cell. *Id.* On October 29, 2019, he had a medical visit at the chronic care clinic. *Id.* On October 31, 2019, he received another visit at the front of his cell. *Id.* And, on November 5, 2019, Mr. Robertson met with a member of the mental health staff for purpose of medication management. *Id.* He was described as pleasant and cooperative, and he indicated that he was doing

4

well on his current medications and wished to continue them. *Id.* Given the extensive nature of the care, even if he had not been offered two out-of-cell visits that he denies refusing, the record establishes that he has received care that is not inconsistent with the Eighth Amendment. Mr. Robertson has not demonstrated on this record a right to the extraordinary relief of a preliminary injunction based on this record of care.

Mr. Robertson points out various violations of IDOC policy. He contends that, pursuant to policy, he should not be in administrative segregation at all. And, he contends that the IDOC's policy requires that he be granted privacy for each of his check-ins.[1] He further contends that, if he really did refuse care, pursuant to the IDOC's policy, there would be a separate refusal of care form documenting his refusal and signed by a witness. However, policy violations don't equate to constitutional violations. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Likewise, they do not warrant injunctive relief under the circumstances here.

Mr. Robertson also continues to insist that he needs to be transferred to a specialized mental health unit for treatment; but, as explained in this court's screening order, "[t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). "[T]he Constitution is not a medical code

---

[1] The facts do not suggest that the absence of a confidential setting amounts to a denial of medical treatment or that his privacy concerns represent something more than a mere preference. Further, it is unclear whether Mr. Robertson has any right to privacy in this context. *See Franklin v. McCaughtry*, 110 F. Appx. 715, 719 (7th Cir. 2004) ("we have not previously held in a published opinion that [prisoners] enjoy a constitutional right to privacy in their medical information").

5

that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Even if injunctive relief were warranted, it would be limited to requiring the Westville Correctional Facility to provide Mr. Robertson with mental health treatment that does not violate the Constitution.

While Mr. Robertson insists that he has received inadequate mental health care, the medical records (aside from any factual disputes that might exist) show that Mr. Robertson was seen and treated by mental health staff multiple times during the period in question. While Mr. Robertson is displeased with the mental health staff, and would prefer to receive his mental health treatment in a specialized mental health unit, the Constitution does not require that Mr. Robertson be permitted to choose his provider and it does not require that he receive the treatment of his choice—only treatment that reflects professional judgment. *See Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("medical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards") (internal quotation marks and citation omitted). The record suggests that he received treatment reflecting professional judgment, even if medical professionals might disagree about the best treatment option.

Given the history of extensive treatment, should Mr. Robertson require additional mental health care, there is nothing in the record suggesting that an injunction is necessary to ensure he receives that care. In short, Mr. Robertson has failed to show a likelihood of success on the merits of his claim for injunctive relief, and he has failed to demonstrate that he will suffer irreparable harm in the absence of an injunction. Because Mr. Robertson's allegations of imminent danger are not credible, he can no longer proceed *in forma pauperis*; instead he must pay the filing fee to proceed in this case.

In addition to the motion for preliminary injunction, Mr. Robertson has filed a motion (ECF 10) seeking to correct a date contained in his memorandum in support of his motion for preliminary

injunction. He indicates that he was transferred to the Westville Control Unit on April 20, 2018, not April 27, 2018. This motion was unnecessary and will be denied. Nonetheless, the court has noted the change in date, and appreciates Mr. Robertson's effort at completeness.

Mr. Robertson also filed a motion (ECF 11) asking that exhibits be included as part of his complaint. This too is unnecessary. The exhibits are part of the record, and they would not have altered the court's screening order. Accordingly, the motion will be denied.

For these reasons, the court:

(1) DENIES Jerome Robertson's Motion for Preliminary Injunction (ECF 3);

(2) DENIES Jerome Robertson's Motion to Correct Error (ECF 10);

(3) DENIES Jerome Robertson's Motion Requesting Attached Exhibits to Screening Complaint (ECF 11);

(4) ORDERS Jerome Robertson to pay the $400.00 filing fee by **January 30, 2020**; and

(5) CAUTIONS Jerome Robertson that, if he does not respond by that deadline, this case will be dismissed without further notice.

SO ORDERED.

December 30, 2019　　　　　　　　　　　*s/ Damon R. Leichty*
　　　　　　　　　　　　　　　　　　　　Judge, United States District Court